All right. Our third case for this morning is Gloria Taylor against City of Milford and we will begin with Mr. Ravindran. Sorry I wasn't looking at you. Ms. Ravindran. Thank you. Good morning and may it please the court. Bhavani Ravindran on behalf of Gloria Taylor as administrator of the estate of Stephen Taylor. The undisputed facts demonstrate that Officer Garrett acted as a police officer from the moment he entered Stephen Taylor's home on August 17, 2016. So Ms. Ravindran let me let me start you out right away with what concerns me about kind of the analytical structure in this case. The ultimate question is did a state actor use excessive force and I'm not certain or was the state actor you know acting reasonably under all of the circumstances and I'm uncomfortable with the idea that the job label governs that so strictly whether the person is a police officer or they're a paramedic or they're a fire officer or they're you know somebody who works in the office but who happens to be trained in CPR. The other cases on which the district court relied such as in particular Thompson against Cope illustrate you know an obvious medical intervention something you know trying to give somebody a sedative a shot and so we would all say well you know that's that's what we need to look at here and so I wonder what use all of these labels are is there I mean it seems weird to me that there would be one rule for police officers and another rule for paramedics. Yes your honor within Thompson v. Cope the reason that that label is important is only because Thompson v. Cope's training is limited. In Thompson v. Cope the court held that it is not clearly established that a reasonable paramedic would know he is violating rights by affecting the seizure using a paralytic and in that opinion the court reasoned that paramedics have a distinct set of professional standards and training which affects whether or not a reasonable paramedic would have the same notice as opposed to a police officer who receives training on constitutional violations seizures and other very specific issues that police departments deal with but I will say that the plaintiff's position at this point is that this is a question of fact it doesn't just remain whether someone is named a police officer or paramedic but it is determined by the actions they took at the scene of the incident did they take law enforcement actions or did they take medical actions. All right so when you said a magic phrase just a the thing that makes me most uncomfortable about this case is that it seems that there are a number of critical questions of fact that didn't get resolved in the light most favorable to the non-moving party you know for example when officer Garrett enters the room was Mr. Taylor head-butting the wall and hitting and kicking and doing all sorts of things or as Serena and doing none of those things you know did he does he just give them a foggy I don't recognize you what are you doing in my house does the officer refuse to let them give him some orange juice you know these strike me is extremely relevant to the question whether the force that was used was excessive I can certainly imagine somebody maybe even in a medical emergency who might still be flailing around so much that an officer would need to bring them under control using you know subduing tactics but maybe not you know it just seems to me that there are many questions of fact here we believe there are many questions of fact and before the qualified immunity analysis can be entered into it must be determined whether the actions taken were for law enforcement or a medical purpose we also believe there were questions in fact that were established as to every element regarding 1983 was there a seizure let me pick up on what you just said please you said that it has to be determined whether the actions were for law enforcement purposes versus medical purposes in light of your earlier statement that labels don't really matter it's really about the training and where they're they're coming from how does that law purposes fit into the analysis you know I would ask you and the panel to look at McKenna as an instructive case from the Sixth Circuit that describes how to conduct this analysis McKenna tells that if engaged in a law enforcement purpose at the scene of a medical call it is still clearly established that you cannot unreasonably seize a person as a police officer there are cases that hold that a paramedic in certain circumstances can conduct a seizure that is for law enforcement purposes just as a police officer can provide medical aid so mrs. Robin I'm unclear on the criteria you're asking us to employ are they the gram factors for excessive force as a result of law enforcement are they some modified gram factors as a result of the use of force as part of a law enforcement officer are they a different set of factors which are you asking us to use I'm asking the court to use the gram factors there was a clear seizure at the scene of the Taylor's home a seizure is defined as an intentional limitation of a person's freedom and no one can give facts that show that Steven Taylor wanted to be held face down into a mattress for three is the testimony from officer Garrett himself relevant to the application of the gram factors he doesn't say he was rendering medical assistance he knows that the paramedics are on their way he says he's using police tactics is that important yes officer Garrett in his deposition testified that he used up to six tactics that he learned at the police academy for law enforcement engagement they never ties them to medical assistant he's a trained paramedic as well as it happens but he doesn't say he's drawing on that set of expertise that he may have does he know in fact during the hold he testified that he said to Steven Taylor medical aid is on its way indicating that he was not providing medical aid during the restraint he does his testimony is very supportive of the fact that there was no medical aid provided until the EMTs arrived so can I just ask I mean this goes back to my original concern suppose it hadn't been officer Taylor suppose one of the paramedics had come into the room at an earlier moment and had taken one look at mr. Taylor and punched him as hard as he could in the face would that be medical assistance that would not be medical assistance so just because a paramedic does it that's my point doesn't automatically make it medical assistance we certainly hope you know that that's what they'll do but the fact that they're paramedic doesn't necessarily mean they're rendering medical assistance right and taking that point further the fact that officer Garrett had training as a paramedic and not render every action he took unseen as a medical assistant this Robin Ryan is there any information that officer Garrett was there as a result of any criminal investigation no your honor there was no criminal investigation ongoing which is part of the application of the Graham factors there was no threat there was no suspicion of criminal activity which is what makes the seizure unreasonable in this matter going forward officer Garrett does try to use the excuse that there was a medical distress call as a reason that his response was long was medical in purpose but he arrived at this scene of a medical distress call did not bring in his first aid kit entered issuing orders to the individuals in the home did not provide juice to Steven Taylor despite the fact that that was the one medical remedy that was readily available he did not check his vitals his pulse his breathing he did not take his weight off of his back when vomit was clearly seen on the mattress when Steven Taylor indicated that he could not breathe officer Garrett according to Serena Taylor one of Steven's Taylor's nieces that was in the doorway of the bedroom during the interaction said that officer Garrett was putting his entire weight on the back of Steven Taylor what is this Robin John what is the plaintiff's position that to the purpose for the application of force the purpose of the application of force according to officer Garrett according to the plaintiff what's the plaintiff's position as to why an officer would go into this home and apply force in the manner you've described we believe that officer Garrett based on the evidence before the court had an unreasonable belief that that Steven Taylor was a threat to himself or others based on the head butting the wall which he indicates that he believed occurred of course that's disputed by Serena Taylor so we believe that issue and that question goes to whether or not the seizure was reasonable which should be looked at by a jury and in your argument what makes this more law enforcement activity as opposed to medical activity that he thought he was a threat to himself there is multiple cases that would help us determine including McKenna and grape what a law enforcement purpose is as opposed to a medical purpose in the McKenna case the court found that there were two actions the police officers took even though they were responding to a distress call that were not medical number one was that they closed the subject and number two is that they conducted a search after what McKenna helps instruct is that you can look at the purpose of the actions and also what exactly not necessarily just the but what actually occurred there when we have an officer who has the know-how to provide medical aid and chooses instead to detain a subject we can see through those facts that there's an argument to be made to the jury that that was a law enforcement purpose and if there are no further questions at this time I'd like to reserve my remaining time for a bottle and I thank you thank you mr. Zimmer thank you may it please the court Austin Zimmer on behalf of the defendant appellees did not violate a clearly established right in rendering aid to mr. tickler during up in what way was officer Garrett rendering aid that is supported by undisputed fact I'm not saying is there an argument that officer Garrett could make before a jury but I'm looking at page 20 and so much of what you say seems to hinge on the fact that that officer Garrett thought that this man was it was a harm to himself or others but what the district court recounts in the third full paragraph on that page Stephen fell stumbled and mumbled incoherently but he did not clench his fists move towards Garrett head but a wall purposefully hit a closet or try to harm himself Garrett raised his voice told Stephen to calm down and said get back Serena tries to say something but but there's nothing in in the facts taken favorably to Taylor that suggests that the sort of extreme intervention that officer Garrett engaged in screaming at him to calm down pinning him down squishing his face into the bed and so forth was was anywhere in the realm of reason I mean officers don't come into a room and see somebody mumbling in Co I mean half the Alzheimer's patients in the world you know would have themselves flopped down onto a bed if that were enough to justify this force your honor I'd respectfully disagree because we get in the Seventh Circuit has told us this to look at the specific context of the cases and when he walked in he was informed by mrs. Taylor that was having a sugar spell he came in as a paramedic so he was aware of the possible things that could happen to someone with low blood sugar there's no evidence of that though as miss Ravindran said he doesn't come in wearing his paramedic hat he and none of the measures that he takes seem in the slightest degree medical to me I think it's actually fairly common knowledge that if somebody has a sugar problem who's a diabetic you can give them some orange juice it's just a temporary measure maybe they need more aggressive intervention than that they're taking the record in the light most favorable to Taylor I don't see medical coming out of what officer Garrett did well I would disagree your honor because he's responding to an emergency medical call he is learns right when he walks in he's having a sugar spell taking the facts in light most favorable the plaintiff he said visual fall he sees him stumble and he sees a mumbling incoherent and why does that allow you to crush somebody onto a bed I just I think his basic argument is from the account that he gives which a jury might believe if he's flailing all around the room and crashing into things and was quite reasonable and if a jury were to believe his account of what went on then that would be that would be that but if the jury were to believe instead the account that Serena and Shannon give as well as the fact that when he comes in he's not doing anything medical he's not with the EMT team he doesn't have you know he doesn't even take sort of ordinary measures that you don't need a or so you don't need a medical kit to do that well your honor then I would say the court needs to look to what was the purpose of responding to his call why is that where does that fit in with the gram factors and with other other things and and how do we given that this is an objective test you know was there excessive force use we need to step back obviously in the context but it's an isn't objective that's a subjective test you're asking us to use well your honor what I'm what I'm asking the court to do is you need to go to the gram factors this court can uphold the decision of the district court because this fight was not clearly established and I think the facts of this not clearly established because we have to look at and this is the most important thing I think for the court to look at is what was the purpose for officer Garrett to be there there was no law enforcement purpose whatsoever for officer Garrett to be at the house so has talked repeatedly about the McKenna case and that perfectly illustrates the difference between a law enforcement purpose and a medical purpose and the McKenna case when the officers respond to a medical emergency the first thing they did was say is he on drugs are let me just go to McKenna the Sixth Circuit says whether the officer is acting as an officer or medical care provider it's a jury question and that again I maybe I just think of procedure too much but but it seems to me that we have different ways of looking at what went on here which sounds like a jury question to me I get your honor respectful I disagree with that I think well everybody can agree with even the enough in this case is officer Garrett was responding there for a medical emergency also it was also trained as a paramedic officer Eric's employer gave him the right and in fact encouraged him to respond to those type of things why sir Garrett was in the house he did not ask are there drugs present he did not ask did he hit you he asked if there were any weapons present would that qualify your honor I don't think that just say you don't think that qualifies at all I think that is a common question and that's something that that the argument that plaintiff may but that's just a pure safety question that a paramedic would ask are there if he was there in a law enforcement capacity is he entitled to qualified immunity yes if you well if he was there for a law enforcement as opposed to a medical reason if if he's there for a law enforcement capacity is he entitled to qualified immunity given for your then what I think we'd have to do if he was there for a law enforcement capacity for example let's he was executing a search warrant for example that right would be clearly established so then I think we'd have to go to the second the second prong of it and did he violate that and then an issue of what whether it was a seizure or not and then we have to look at the the grand factors but in this issue of fact at that point if he's there performing in a law enforcement capacity would there be an issue of fact that would preclude a qualified immunity finding as a matter of law perhaps your honor but I think what's so apparent in this case is there's no question of fact at all of whether it was there in a law enforcement capacity everyone is it not relevant to look at his own characterization of the tactics that he was using and at those tactics themselves there's there certainly is no dispute that he forces Taylor down in the bed and smushes his face down to the point that he swallows his own he aspirates actually doesn't swallow he I'm very uncomfortable again with this label idea that just because you label somebody you know a paramedic then they automatically can't be using excessive police force or if you label somebody something else it seems to me you have to look at what they're doing objectively your honor a judgment I would agree with that completely I don't I think the label whether you're a police officer a paramedic a firefighter the mayor it doesn't matter as this case a public employee is entitled to qualified immunity so what really needs to look at is what was purpose for the individual being there and also what does he do I mean maybe he walks in with a paramedic purpose but if he you know sits on him as he as he does and forces him down and does police stuff pressure point tactics and the like I am hard he doesn't even defend these things himself as reasonable medical measures that an emergency medical technician would perform prior to getting somebody you know to a hospital or to qualified medical help you know I think that's what goes I think that's what goes to our most compelling argument this right is not clearly established because it's Garrett's conduct is not so obvious that person in his position would recognize it as a violation for example treating physician testified that restraint may be appropriate for medical reasons when treating a hypoglycemic patient own police practices expert in this case I like we have conflicting expert report we certainly have experts that you've lined up on your side but then we have other experts who say that Taylor's death results from anoxic encephalopathy and the cardiac arrhythmia was partly caused by Garrett his ears cut off he aspirates in the bottom you know in other words once again an issue of fact experts and experts you know that may be an expert that may be an issue of fact on the causation issue but when we look at whether the right was clearly established not to have some state actor come in and sit on you when you're not committing any crime not threatening anyone not in any way there are a lot of cases that say that that were decided long before these events happen your honor but they weren't in the context of a person responding to a medical emergency and I think why it's so difficult for this report to say this right was clearly established as plaintiff whom police practices expert highlighted this asked is there clearly established national standards that govern the use of force for officers when the rent an emergency medical assistance they were able to answer they weren't able to answer that question they said no I do not know so all points that the court raises it goes to the fact that these are really established rights now I would admit that if Garrett would have started searching the house for drugs if he would have asked incriminating questions to Garrett's children if he would like in the McKenna case ran the license plate all that but it changed it from a medical emergency to a law enforcement response but we have none of that there but you don't think it's possible it's just as a matter of law you're saying it's not possible to use excessive force with no medical justification as long as the could certainly be he shot him that might perhaps be excessive force under the circumstances that's not we have here it's a sort of restraints the difference between shooting and strangling somebody to death well one he didn't strangle anybody to death that's our position but it was a restraint that was used for a purpose of based on the that he observed him stumbling mumbling incoherently and there's one of the cases that cited to there was a situation where the individual was tased and the court found that to be an appropriate medical response you know because sometimes as in Thompson you know you need to disable the person just to get the situation under control but the problem is taking the facts as Taylor presents them this isn't one of them I would disagree with that your honor because as Taylor presents the facts and agrees this was the call for a medical emergency what's dangerous about mumbling mumbling stumbling and falling coupled with a low blood sugar is very potentially dangerous and so you block their access to orange juice no I I am hard-pressed to think that though mumbling stumbling and falling are a danger to anybody maybe the person is gonna you know get a bruise it is potentially dangerous and especially you know when you look at Serena's testimony that his head was bleeding and this is what qualified immunity is for it is for to avoid the catch-22 situation that Garrett takes action and gets good or because it's very easy to think of a possibility where Garrett arrived did not do anything mr. Taylor fell on injured himself injured someone else and this is a lawsuit for deliberate indifference normally of course there's no there's no obligation on people to take affirmative steps that's been true since the Ducheney case potentially but if he was if he was there and he was present and he felt act so the fact that he could be bringing it brought in a lawsuit that's the purpose of qualified immunity I think that's what the court recognized correct there's a potential windfall effect if all fight immunity is not granted in these cases that could prevent their medically trained people from responding to future of urgencies okay thank you very much for your time thank you very much mr. Zimmer anything further mr. Vendron just briefly thank you your honor Garrett arrived and acted with as a police officer with no ability desire or equipment to provide treatment he entered as an officer assessed the threat not the vitals called for police backup and administered force techniques and the seizure with no medical purpose it was clearly established law such that a reasonable police officer for police backup to he did your honor he called for the county to respond that's when lieutenant McCullough arrived on scene he didn't ask for an additional paramedic and another fact I'll point out is that on the way to the hospital a paramedic intercept meaning it's an on-duty paramedic with additional equipment met the ambulance entered and started to administer aid to Steven Taylor but just to address some of the points raised by my colleague yes officer Garrett was responding to a dispatch call but as the court rightfully pointed out what really matters here is the actions he took once he got there whether or not he was responding to a medical call goes to his awareness of whether there was a medical distress situation occurring and under Richmond v. Sheehan that can go to the reasonableness of the force that he used it has been clearly established in the Seventh Circuit at least since 2008 under the Richmond v. Sheehan case thoughtfully written by Justice Posner and the McAllister case in the Abdullahi case that a prone face first restraints can be unreasonable especially if we look at the Phillips case where the officer has awareness of a medical distress or an issue relating to a case in the Seventh Circuit that shows an officer's response to a medical distress call McAllister is instructive there was a car accident and some information that the officer had that the plaintiff in that matter may have been intoxicated when he arrived at the scene of a car accident he grabbed the hypoglycemic plaintiff and threw him to the ground restraining him briefly and that was found to be a question of fact regarding reasonableness and qualified immunity did not apply under a law enforcement capacity when we look at this case when you took law enforcement actions qualified immunity should not apply here a question of fact has this been established regarding whether a violation occurred and there is clearly established law as late as early as 2008 regarding this issue regarding the doctor who indicated that this restraint that a restraint could be relevant here Dr. Zasada one of the treating doctors said a quick restraint for seconds for hypoglycemia could be okay to check blood pressure and blood sugar levels he did not give an open door for any amount of restraint for a hypoglycemic patient and he did not indicate that a face down seizure was appropriate finally there's nothing that stopped officer Garrett from calmly talking to Steven Taylor and allowing him to juice his family was trying to provide him and the last point I will raise is that my colleague helped me drive home my point and that there is a question of fact as to each issue in this case such that a jury should decide officers cannot pick and choose when the 4th Amendment applies their actions and when it does not the Constitution applies in Chicago as it does in Milford Illinois. It is and should be able to rely on their right to be free of an unlawful and unreasonable seizure in any law enforcement interaction, including an officer responds to a 9-1-1 call during a medical emergency I thank you for your time and I respectfully ask that this panel reverse the trial court's order granting the defendants Garrett's motion for summary judgment as tonight the 1983 excessive force claim. Ms. Ravindran for in response to Mr. Zimmer's clearly established point you're citing Richmond from 2008 and McAllister is that correct? Yes. Any other cases besides those two? Abdullahi, your honor. It is also cited in both the appellant brief and the reply. Thank you. Thank you. All right, thank you very much to both counsel. The court will take the case under advisement.